The State of Louisiana, appellee—*v.* John Denny et als., G. F. Oldis and Dorothy Reynolds, widow of, &c., appellants.

Where an accused, who had been admitted to bail absconded before trial; and a judgment *nisi* was entered against the sureties upon his bond, and he is afterwards retaken under a capias and imprisoned: *Held*, that the application of the sureties within ten judicial days to have the judgment *nisi* against them set aside—there being no suspicion of collusion to defeat the ends of justice—should have been granted; and the prisoner should have been brought into Court to enable them to make a formal surrender of him according to law.

APPEAL from the First District Court of New Orleans, *Robertson*, J. *Morse*, Attorney General, for the State:

The surety on a recognizance in a criminal case, after the forfeiture of the recognizance has no right to surrender the principal in order to exonerate himself from liability. Johnson, 3 Cush. 454.

In debt on a recognizance no defence after forfeiture, that the defendant was arrested upon a search warrant issued upon the same indictment, &c., &c.

After forfeiture, but before suit, it would not answer to surrender principal. *People* v. *Anable*, 7 Hill 33. U. S. Dig. vol. 1, No. 47, p. 425 and 31. *Deunad* v *State*, 2 Kelly, 137, same vol. Dig. 24. *State* v. *DaGesp*, 1 Bailey, 410, 420. *Stegers* v. *State*, 2 Blackford 104, 1 Chitty 104.

*Randall Hunt*, for defendants and appellants:

*James Warner* was indicted, jointly with *John Denny* and *Wm. Spencer*, for larceny, and gave bond in the sum of $1000, with *G. F. Oldis* and *Daniel*

STATE
v.
DENNY.

*Reynolds*, as his sureties, to appear at the First District Court of New Orleans, to answer to the charge.

His trial was fixed for the 9th day of February, 1852. It was commenced on that day, and continued over to the next day, the 10th of February. *Warner* appeared in Court, and was present during the proceedings had in his case on the 9th, but did not answer or appear, when he was called in Court, on the 10th day of February. *Reynolds* and *Oldis*, his sureties, did however appear; and they informed the Court that they believed *Warner* had run away. The District Attorney immediately moved that the bond of the accused be called and forfeited, and that a capias be issued against *Warner*. This was done. Judgment was rendered on the 10th day of February, 1852, against *G. F. Oldis* and *Daniel Reynolds*, in solido, for the sum of $1000, for having failed to produce in Court *James Warner*, according to the condition of their bond; and ten judicial days were allowed them to set aside the judgment, upon complying with the requisites of the Act of March 11, 1837. At the same time it was ordered, " that a capias issue against said *Warner*." Several days after this, *Warner* was arrested by virtue of the capias thus issued on the motion of the District Attorney, and was lodged in safe custody in the Parish Jail.

On the 21st day of February, 1852, within ten judicial days after the rendition of the judgment, and before it was signed, *Oldis* and *Reynolds*, the sureties of *Warner*, appeared in open Court, and upon showing to the Court that their principal, *Warner*, had been arrested, and was then lodged in the Parish Prison, in custody of the Sheriff of the Parish of Orleans, moved, 1st—that *Warner* should be brought into Court, in order that his sureties might formally surrender him; and 2d—that the judgment against them should be set aside, and that they should be discharged from further liability on their bond. But the Court refused to grant an order to enable them formally to surrender their principal, *Warner*, or an order to set aside the judgment against them, and to discharge them from any further liability on their bond; and subsequently signed and made final the judgment which had been rendered against them on the 10th day of February, 1852. From this judgment the sureties have appealed.

The statute of 1837, provides that a judgment of forfeiture on a bond or recognizance in a criminal case, for the failure of the accused to appear and of the securities to render him, may, at any time within ten judicial days, after notice of judgment to the parties, in the parish of Orleans, be set aside, by the appearance, trial and acquittal, or conviction and punishment of the accused, and that no such judgment shall be rendered, if it be proved to the satisfaction of the Court that the accused was prevented from attending by physical inability.—Sec. 1. It provides further that " that any surety may be relieved from responsibility, by making a formal surrender of the defendant or party accused to the sheriff or his deputy in open Court, or within the four walls of the prison of the parish, and not otherwise."—Sec. 2, par. 2, p. 99.

The motion to set aside the judgment of forfeiture in this case, was made within the time allowed by law; and upon good cause shown, it should have been granted.

The offer formally to surrender in open Court, the accused, who was in the hands of the sheriff and within the four walls of the prison of the parish, and who could therefore have been held to answer to the indictment against him— was a good cause in law.

The object of the law in respect to the bond, was to secure a trial of the accused, without inhumanity or punishment before conviction, and not to extort money from an innocent surety, in a case where a trial could be certainly had. In this case the forthcoming of the prisoner was secured. He was in jail, ready to await the order of the Court, and obliged to submit to such punishment as he might be legally sentenced to undergo.

" One object of the recognizance," said Ch. J. Savage, of new York" "is to cause the accused to appear and answer the charge, and to submit to such punishment, if any, as shall be adjudged ; if that object has been answered by his subsequent arrest, then the bail are discharged."—10 Wend. R. 435.

" The object of a recognizance is not to enrich the treasury, but to combine the administration of justice with the convenience of a person accused, but not proved to be guilty. If the accused prove innocent, it would be unreasonable and unjust in government to exact from an innocent man a penalty intended only to secure a trial, because the trial was suspended in consequence of events which are deemed a reasonable excuse for not appearing on the day mentioned

in the recognizance. If he be found guilty, he must suffer the punishment intended by the law for his offence, and it would be unreasonable to superadd the penalty of an obligation entered into only to secure a trial." This is the language of Chief Justice Marshall, in speaking of the forfeiture of a recognizance where there was no design to evade the justice of the country. In that case, he observed, where "a man repairs the default, as much as in his power, by appearing and submitting himself to the law, the real intention and objects of the recognizance are effected, and no injury is done." 1 Brock. R. 256. *United States* v. *Feely*.

The Supreme Court of this State, in 1841, declared that the statute of 1837 should be liberally interpreted. "Its object was to secure attendance at Court of the persons accused of offences, to answer the accusations preferred against them; and it should be executed in a way that will attain the object, and not to punish parties in advance." 19 L. R. 550. See also 1 Annual Reports, 257, 263.

SPOFFORD, J. The accused having been retaken under a capias to answer the charge laid against him, and being within the four walls of the parish prison at the time the sureties appeared in Court to move that the judgment *nisi* against them be set aside; their appearance for this purpose having been timely, and within the ten judicial days, and there being no suspicion of collusion to defeat the ends of justice, we are of opinion that the the judge should have granted their request and ordered the prisoner to be brought into Court to enable them to make a formal surrender of him according to law. A reasonable construction of the 2d Section of the Act of March 11th, 1837, (Bul. & Curry 281,) does not limit the right of the sureties to make such a surrender of their principal and thus relieve themselves from responsibility, to the time prior to the forfeiture of the bond by a judgment *nisi;* at least where no prejudice can happen to the State, the object of the law may be achieved by a surrender within the ten judicial days after notice of such judgment. *The State* v. *Cotton*, 19 L. R. 550. *The State* v. *Hamill*, 6 Ann. 260. The State is rather desirous to bring offenders against the laws to trial and punishment, than to fill their public coffers by levying contributions upon sureties. Even when their liability has been fixed beyond the control of the Courts, the Legislature has been in the habit of relieving them, upon the subsequent appearance and conviction or acquittal of the principal.

In this case, the refusal of the Court to grant the reasonable and timely request of the sureties prevented them from making a surrender of the accused, and procuring an *exoneretur*. Upon the principal that no one should suffer injury from the act of the Court we think the sureties who have appealed from a judgment which was made final against them under such circumstances, are entitled to a discharge.

It is therefore ordered and decreed that the judgment of the District Court against *G. F. Oldis* and *Daniel Reynolds*, as sureties on the appearance bond of *James Warner*, be reversed; it is further ordered and decreed that the State take nothing by its motion.